(No. 33989.—)
THE PURE OIL COMPANY, Appellee, *vs.* THE CITY OF NORTHLAKE, Appellant.

*Opinion filed November 26, 1956—Rehearing denied Jan. 23, 1957.*

Schaefer, J., dissenting.

Everett Lewy, City Attorney, of Northlake, for appellant.

Franklin J. Stransky, Maurice J. Nathanson, and W. D. Deakins, Jr., all of Chicago, for appellee.

Mr. Justice Hershey delivered the opinion of the court:

The city of Northlake appeals from a judgment of the circuit court of Cook County, which in a declaratory judgment proceeding, declared that the plaintiff, Pure Oil Company, has a right to construct driveways of reasonable width for the purpose of affording access to certain property upon which it intends to build a service station. The court certified that the validity of a municipal ordinance is involved, and the public interest requires that if an appeal be taken it come directly to this court.

The property is located at the southwest corner of North Avenue and Wolf Road in a business section of Northlake. It is zoned "commercial," which permits its use as a service station site.

On September 14, 1954, the plaintiff asked for and received a building permit. However, on October 8, 1954, the city council passed a frontage-consent ordinance, and the plaintiff was advised that it could not proceed with the work until it complied with this ordinance. In accordance with the terms thereof, it was necessary that there be filed with the city a frontage-consent petition containing the

signatures of "the owners of a majority of the frontage abutting both sides of the street within the block where the proposed business or occupation requiring frontage consents is located."

The plaintiff secured the requisite signatures, and on November 8, 1954, presented its petition to the city council, together with a $100 fee which the ordinance states is "to reimburse the city for the expense of certifying the accuracy and correctness of the petition." The city council never verified the signatures, but the city concedes on this appeal that the plaintiff properly complied with the ordinance.

Ten days later, on November 18, 1954, the city passed a driveway ordinance, section 12-24 of which provides as follows: "Driveways. It shall be unlawful to construct or maintain any driveway in or across any public walk, curb or parkway without first having obtained a permit therefor from the City Council of the City of Northlake. Application for such permits shall state the size, location and material to be used in such driveway and shall include plans and specifications therefor, and it shall be unlawful to depart from such plans and specifications or vary from them without permission of the City Council of the City of Northlake."

The plaintiff never asked for or obtained a "driveway permit" from the city council. Rather, it filed the instant suit, alleging that it had been advised the mayor and members of the city council did not want a service station on the property, and since the issuance of driveway permits rests within the uncontrolled discretion of the city council, it would be a waste of time to make application for such a permit. The city denied that it ever advised the plaintiff to that effect, but does state it would be dangerous and highly undesirable to issue such a permit in view of the traffic congestion on that corner.

The plaintiff made three separate and alternate con-

tentions regarding this ordinance: (1) The ordinance is not applicable to the proposed driveways. (2) The city does not have statutory authority to enact the ordinance. (3) The ordinance is unconstitutional.

The trial court held for the plaintiff, and on this appeal the city's sole argument is that the ordinance is both applicable and valid, with the result that the plaintiff is precluded from constructing any driveways to the property until such time as there has been compliance with the ordinance. If it is wrong in this contention, the city agrees we should affirm the trial court.

Even assuming the ordinance encompasses the instant situation, it is not a valid measure. There are two aspects to this question: whether the city had statutory authority to enact the ordinance and whether it is constitutionally valid.

The ordinance purports to vest with the city council the power to deny, in its absolute discretion, permission to construct or maintain any driveway in or across any public walk, curb or parkway. No restrictions are placed upon this power, nor are there any standards established to govern its exercise.

Since cities possess only those powers which are granted them by the General Assembly, (*People ex rel. Gutknecht* v. *City of Chicago,* 414 Ill. 600,) we must first ascertain if the ordinance is authorized by statute.

In addition to the general power to pass "all necessary police ordinances," (Ill. Rev. Stat. 1955, chap. 24, par. 23—105,) the Illinois legislature has delegated to cities the authority to "vacate, layout, establish, open, alter, widen, extend, grade, pave, or otherwise improve streets, alleys, avenues, sidewalks, wharves, parks, and public grounds," (par. 23—8,) to "regulate the use of streets and other municipal property" (par. 23—10,) to "provide for and regulate cross-walks, curbs, and gutters" (par. 23—18,) to "regulate the use of sidewalks, the construction, repair,

and use of openings in sidewalks." (par. 23—20,) to "regulate traffic and sales upon the streets, sidewalks, public places, and municipal property" (par. 23—27,) and to "construct, repair, and regulate the use of culverts, drains, sewers, and cesspools. (par. 23—35.)

No mention is made of driveway regulation as such. But municipal corporations possess such implied powers as are necessarily incident to the powers expressly granted, (8 I.L.P., Cities, Villages, etc., sec. 65,) and it follows that in order to properly discharge its responsibilities regarding the grading of sidewalks, the control of traffic, the regulation of drainage, etc., a city must have some supervision over driveway construction and maintenance. However, while the foregoing grants of authority establish the *existence* of a limited regulatory power, they also determine the *extent* of that power. Thus, a city must show wherein its proposed driveway ordinance is necessary to facilitate the exercise of a delegated power. Its authority is therefore not unlimited, and this court has so held. See *Lydy, Inc.* v. *City of Chicago,* 356 Ill. 230; *Wilmot* v. *City of Chicago,* 328 Ill. 552, *Jacobs* v. *City of Chicago,* 244 Ill. App. 132.

The same result obtains if the problem is viewed from the standpoint of constitutional power rather than legislative authority. For, as expressed in the *Lydy case,* "The right of a property owner to access to the public streets adjoining his property is a valuable property right, which cannot be taken away without just compensation. [Citations.] The purpose of the constitutional provision (art. II, sec. 2,) is to protect every citizen in his personal and property rights against the arbitrary action of any person or authority." (356 Ill. 230, 240; see 10 McQuillin, Municipal Corporations, 2d ed., sec. 30.64.) At most, that right may be restricted in some reasonable manner consistent with the public good. The instant ordinance not only fails to spell out any reasonable standards which a

property owner must meet as a condition precedent to acquiring a driveway permit, it purports to authorize the outright denial of a permit in any situation, depending upon the will of the city council. Accordingly, for this additional reason, the ordinance in question cannot be sustained. See 5 McQuillin, Municipal Corporations, 2d ed., sec. 18.12.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*

Mr. JUSTICE SCHAEFER, dissenting:

I agree that authority has been delegated to the municipality to regulate the location and the construction of driveways that cross the parkway, as the opinion holds. But I do not believe that the two cases upon which the opinion rests support its conclusion that the present ordinance is invalid on its face. Both of those cases involved ordinances relating to driveway permits. In the *Lydy case* authority to issue permits for driveways that changed the grade of sidewalks was given to the commissioner of public works, who was to determine after investigation whether the proposed driveway would "unduly obstruct public travel or be dangerous to the public." The ordinance was held invalid because it was thought to delegate legislative authority without providing adequate standards. In the *Wilmot case,* as in the case at bar, authority to issue permits was retained by the city council, and the ordinance was sustained. The court there said, (328 Ill. at 563-4), "An ordinance permitting the city council to retain the control of the city streets and sidewalks as authorized by the legislature is not discriminatory, oppressive or unjust. *Fisher* v. *City of St. Louis,* 194 U.S. 361." Our more recent decision in *People ex rel. Armanetti* v. *City of Chicago,* 415 Ill. 165, is to much the same effect.

I would agree that it would be better practice for the council to include in its ordinance a statement, particularized to the fullest extent possible, of the conditions under which it would issue driveway permits. But I would not hold an ordinance invalid because it does not do so. No delegation of legislative power is involved, and it seems an unnecessary refinement to require the agency that has the power to announce in advance how it proposes to exercise it. The fullest announcement would not save arbitrary municipal action, and the absence of any announcement should not invalidate municipal action if it is otherwise valid. If and when there is discrimination in the exercise of the power, judicial remedies are available.

The opinion states that the present ordinance "purports to authorize the outright denial of a permit in any situation, depending upon the will of the city council." The ordinance contains no language suggesting that it purports to do anything of the kind. Nor does the city make such a contention. It says: "No contention is made that the right to access to the street, which is a property right owned by plaintiff, can be denied or taken away without paying for it. The city, through its permit power, merely seeks to regulate the construction of driveways so that abutting property owners will exercise their right of access in a manner that will not be a public nuisance or menace." In my opinion we should not determine the propriety of an exercise of municipal power by presuming in advance that the power will be abused.

The plaintiff brought this declaratory judgment action without having applied for a driveway permit. That the action was untimely appears from the judgment of the trial court which is that the plaintiff has a right "to construct, maintain and use driveways of reasonable width and suitably located * * *." What is a reasonable width, what is a suitable location and who is to determine those questions, is not stated.