(No. 33785.—

LILLIAN V. FOX *et al.*, Appellees, *vs.* THE CITY OF SPRING-
FIELD *et al.*, Appellants.

*Opinion filed January 24, 1957.*

RICHARD R. GRUMMON, and CARL T. MEYER, City Attorneys, both of Springfield, and SORLING, CATRON & HARDIN, of Springfield, (GEORGE A. NICHOLS, of counsel,) for appellants.

PREE AND PREE, of Springfield, for appellees.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

The owners of two adjoining lots, located in Springfield, brought suit in the circuit court of Sangamon County to restrain the city from enforcing a zoning ordinance whereby the property was restricted to residential use. A number of residents in the area were permitted to intervene as parties defendant, and after a hearing the chancellor declared the ordinance unconstitutional in its application to the property and granted the plaintiffs' prayer for injunction. He thereafter certified that the validity of a municipal ordinance is involved and that the public interest requires a direct appeal to this court.

Reversal is asked on two grounds: (1) the court did not have jurisdiction of the cause, (2) the ordinance is constitutionally valid.

The jurisdictional objection is predicated on a claim that this suit in equity is an improper attempt to obtain judicial review of a decision of the Springfield zoning board of appeals.

In 1953 the plaintiffs applied to the board of appeals for a variance that would authorize the property to be used for a gasoline service station and other commercial purposes. Their request was denied. Later, they filed the instant suit for injunction.

Section 73—6.01 of the zoning article of the revised

Cities and Villages Act, added in 1949, (Ill. Rev. Stat. 1951, chap. 24, par. 73—6.01,) provides that all final administrative decisions of the board of zoning appeals shall be subject to review pursuant to the Administrative Review Act. Section 2 of the Administrative Review Act provides as follows: "This Act shall apply to and govern every action to review judicially a final decision of any administrative agency where the Act creating or conferring power on such agency, by express reference, adopts the provisions of this Act. In all such cases, any other statutory, equitable or common law mode of review of decisions of administrative agencies heretofore available shall not be employed after the effective date hereof." Ill. Rev. Stat. 1951, chap. 110, par. 265.

It follows that if the present proceeding in the circuit court was for a "review" of the board's decision, the court was without jurisdiction. But if it was an original action for independent relief, it was not a "mode of review" and the statute is no bar.

The board of appeals record was not before the circuit court, and it did not purport to review the decision of the board. That is, the court did not consider whether facts existed which made it mandatory under the statute for the board to grant a variance. (See Ill. Rev. Stat. 1953, chap. 24, par. 73—4.) Indeed, we do not know from the record before us whether the Springfield zoning board of appeals has been empowered by ordinance to make a variance directly or whether that power has been reserved to the corporate authorities. If the latter be true, then the board acts in a mere advisory capacity, making recommendations to the council, and does not enter a final, reviewable order. Therefore, it is clear that the circuit court proceeding was not one to "review" the 1953 decision of the board; rather, the court was called upon to exercise its traditional role of determining the constitutionality of

legislation. (Cf. *Pringle* v. *City of Chicago*, 404 Ill. 473; *Braden* v. *Much*, 403 Ill. 507.) The defendants' objection is not well taken.

Having concluded that the court had jurisdiction, we turn next to the merits of its judgment.

The two lots are located at the southeast corner of College and Ash streets in Springfield. College Street runs north and south, and Ash Street east and west. The corner lot is vacant, and on the adjoining lot is a two-story frame residence. Frontage on Ash Street is 150 feet, and on College Street 86 feet.

The character of the neighborhood is residential. For example, taking a square area two blocks on each side with the intersection of College and Ash streets at the center, every piece of property included therein is residential. A more detailed description of the properties along Ash Street will illustrate further. The record shows that in the 14 blocks between MacArthur Boulevard on the west and Fifth Street on the east, a distance extending eight blocks west and six blocks east of the subject property, there are (excluding the lots abutting MacArthur) approximately 50 separate pieces of property abutting Ash Street. The only commercial establishments in this stretch of 14 blocks are two small cleaning pick-up stations, two neighborhood grocery stores, and if it may be called commercial, a State highway building.

The plaintiffs rely heavily on the fact that Ash Street was improved several years ago and since then traffic on it has increased considerably. But this has not caused a trend toward commercialization of the area. On the contrary, a number of residences have been built on lots adjacent to Ash Street during that time. There are numerous decisions in which heavy traffic on an adjoining street has been held to be insufficient to establish the unreasonableness of a residential classification. See *La Salle National Bank* v.

*City of Chicago,* 6 Ill.2d 22, *Herzog Building Corporation* v. *City of Des Plaines,* 3 Ill.2d 206, *Kinney* v. *City of Joliet,* 411 Ill. 289, and *Mundelein Estates, Inc.* v. *Village of Mundelein,* 409 Ill. 291, in each of which the case against the ordinance was stronger than it is here.

Next, the plaintiffs argue that the property would have a much greater value if used as a service station site than if devoted to residential purposes; but this is manifestly an insufficient reason for upsetting the ordinance. (*People ex rel. Alco Deree Co.* v. *City of Chicago,* 2 Ill.2d 350; *Miller Brothers Lumber Co.* v. *City of Chicago,* 414 Ill. 162; *Dunlap* v. *City of Woodstock,* 405 Ill. 410.) This is particularly true here, where the evidence shows that neighboring residential properties would substantially decline in value if a service station were operated on the subject property. One of plaintiffs' own witnesses stated that on the west side of College south of Ash, four houses would suffer a loss in value of 20 per cent, one of 10 per cent, and one of 5 per cent or less; that on the east side of College, the first house south of the plaintiffs' property would be depreciated 20 per cent, the next 10 per cent to 15 per cent, and the next 5 per cent or less; and that three houses north of Ash on College would sustain losses of from 10 per cent to 15 per cent of their value. The defendants' witnesses estimated the depreciation would be even greater, ranging, for example, from 35 per cent to 5 per cent for the 13 properties on the east side of College south of Ash.

A presumption of validity attaches in favor of a zoning ordinance, and the burden of proof is upon the party assailing its validity. We have repeatedly held that where there is room for fair difference of opinion concerning the reasonableness of the classification, the legislative judgment of the city council will be respected. See, *e.g., La Salle National Bank* v. *City of Chicago,* 4 Ill.2d 253.

The overwhelming weight of the evidence establishes the reasonableness of a residential classification for this property, and there was no foundation in fact for the trial court's decree.

The decree of the circuit court of Sangamon County is reversed.

*Decree reversed.*