FIRST NATIONAL BANK OF CHICAGO HEIGHTS, Trustee, *et al.*, Plaintiffs-Appellees, *v.* THE CITY OF CHICAGO HEIGHTS *et al.*, Defendants.— (GERALD J. LaMARRE *et al.*, Intervenors-Appellants.)

First District (3rd Division)   Nos. 77-835, 77-1132 cons.

Opinion filed August 16, 1978.

David P. Kula, of Anthony Scariano & Associates, P. C., of Chicago, for appellants.

Wayne B. Giampietro, of Chicago (Ligtenberg, DeJong, Poltrock & Giampietro, of counsel), for appellees.

Mr. PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

This is an appeal from a decision by the circuit court of Cook County which granted an injunction and a writ of mandamus against the City of Chicago Heights (the City), the defendant in the trial court. The injunction orders that the City remove the barriers it placed blocking the access of the plaintiffs Ralph Crescenzo and the First National Bank of Chicago Heights, to a dedicated street adjacent to their property. The mandamus also orders the City to issue a building permit for a driveway on the plaintiffs' property. The City did not appeal the ruling. The

appellants are an unincorporated association of property owners from Chicago Heights, Illinois, the Save Our Neighborhood Association (the Association) and Gerald J. LaMarre, a member of the Association. The plaintiffs' property is improved with a shopping center. The Association members own land in the residential area immediately north of the shopping center; LaMarre's property abuts the dedicated street to which the plaintiffs seek access.

77-835 )
77-1132) Cons.

As the map above shows, the land in question is a rectangle bordered on the north by 13th Street and on the south by 14th Street (which is also called Lincoln Highway). The plat of the property designates a center strip, running north and south, connecting 13th Street to 14th Street, as Wilson Avenue. Wilson Avenue, although dedicated, was never opened or improved as a street by the City. A natural stream, the Thorn Creek Tributary, flows across the center of the rectangle, from east to southwest. The plaintiffs own most of the land south of Thorn Creek. In 1975, the City granted zoning changes to the plaintiffs, permitting commercial use of their property. In addition, the City, at the plaintiffs' request, vacated part of Wilson Avenue, from the north end of the plaintiffs' property, south to 14th Street. The plaintiffs built a shopping center on their property with an entrance and exit onto Lincoln Highway. The other land on the rectangle, most of it north of Thorn Creek to 13th Street, remained

vacant, except for a city-owned well house. A gravelled strip runs from the well house to 13th Street. There is no evidence that this strip has ever been used by any type of public traffic.

The zoning changes were granted to the plaintiffs by the city council of Chicago Heights after a full hearing on the matter before the Zoning Board of Appeals (Zoning Board). The record of this hearing and the Zoning Board's formal finding that the Thorn Creek Tributary formed a natural barrier and buffer between the residential area north of 13th Street and the plaintiffs' commercial land uses were entered into evidence by the City at trial.

Sometime in 1976, the plaintiff Crescenzo began to grade and gravel a road on land north of his property. The road corresponded to the area on the plat designated as Wilson Avenue. Plans disclosed that he intended to pave it and open it as an access street from his property to 13th Street. Crescenzo erected a bridge over Thorn Creek on the northeastern edge of his property and built a driveway from the bridge to the roadway improvements he made. In December 1976, after he had already begun the project, he applied to the City for two building permits, one for a driveway and another for a street. The City denied the permits, indicating that in order to limit traffic around the residential area north of 13th Street it did not intend to improve or open Wilson Avenue as a public street. The City barricaded the field, preventing the plaintiffs' access to the graded area across it.

The plaintiffs filed this action, specifically seeking an injunction ordering the City to stop obstructing public use of the street Crescenzo graded, a writ of mandamus ordering the City to issue the building permit for paving the street, and a declaratory judgment outlining the rights of the parties involved. No request for a building permit for the driveway was made in this petition. At trial, blue prints and specifications for the paving of the street were submitted to the circuit court by the plaintiffs. The plaintiffs also submitted a form application for a driveway permit. The circuit court, although finding that the improvements the plaintiffs made in the field were illegal, ordered the City to give the plaintiffs a driveway permit and to cease any obstruction of the plaintiffs' access to Wilson Avenue. The court entered no order concerning the building permit for the street. The appellants, not parties in the trial court, filed a notice of appeal. They contend that as owners of property which may be injured by the judgment their interest in the suit is similar to that of the City's.

■■ The plaintiffs argue that the appellants lack standing because they were not parties in the trial court and have not asserted sufficient legal interest in the case to sustain the appeal. The Illinois Supreme Court in *Nott v. Wolff* (1960), 18 Ill. 2d 362, 163 N.E.2d 809, another case

concerning a mandamus for a building permit, considered the propriety of an appeal by a party who was not a participant in the case in the circuit court. In *Nott*, as here, the appellant was the owner of property adjacent to the land which was the subject matter of the suit, and, as here, the defendant in the circuit court was a municipality which chose not to contest an adverse result. The court found that the appellant property owner had a sufficient interest to pursue the appeal, even though not a party to the trial proceedings, because his property might be injured by the judgment and because he asserted issues similar to those presented by the City in the trial court. Based on *Nott* both the Association and LaMarre are proper appellants. See also *Standard Bank & Trust Co. v. Village of Oak Lawn* (1978), 61 Ill. App. 3d 174, 377 N.E.2d 1152.

■■ The appellants, on the other hand, attack the circuit court's jurisdiction to consider the plaintiffs' petition. They contend that this action actually contests the 1975 Zoning Board findings concerning the residential and commercial composition of the area, making the Administration Review Act (the Act), not a writ of mandamus and an injunction, the proper vehicle for review. (Ill. Rev. Stat. 1975, ch. 110, par. 264 *et seq.*) The Act is the only mode of review, barring all other forms of action, when the question in a case directly confronts the correctness of an administrative determination. (*Fox v. City of Springfield* (1957), 10 Ill. 2d 198, 200, 139 N.E.2d 732, 733.) While the record of the 1975 Zoning Board hearing and the Zoning Board findings may be relevant to the resolution of this case, the circuit court, in granting the injunction and mandamus, did not purport to review the correctness of the Zoning Board's action. The plaintiffs' petition sought independent relief which could be granted without such a review, and therefore, the Act is no bar. 10 Ill. 2d 198, 200, 139 N.E.2d 732, 733.

The question, then, becomes whether the owner of property adjacent to a dedicated street has a special right of access to the street even though it has never been improved or opened by a municipality and it is not in use by the public. The circuit court order which barred the City from obstructing the plaintiffs' use of Wilson Avenue acknowledges such a special access right on the part of the plaintiffs as adjoining property owners.

All the cases cited as support for an adjoining property owner's special right of access to a street can be distinguished from the present case on several grounds. Either the streets to which the adjoining property owners sought access were already improved and opened by a city (*R. G. Lydy, Inc. v. City of Chicago* (1934), 356 Ill. 230, 190 N.E. 273; *Pure Oil Co. v. City of Northlake* (1956), 10 Ill. 2d 241, 140 N.E.2d 289; *Department of Public Works & Buildings v. Wolf* (1953), 414 Ill. 386, 111 N.E.2d 322; *Ryan v. Rosenstone* (1960), 20 Ill. 2d 79, 169 N.E.2d 360; *Salem National*

*Bank v. City of Salem* (1964), 47 Ill. App. 2d 279, 198 N.E.2d 137; or the street in question was improved and in long time use by adjoining property owners when ingress and egress was obstructed by private parties (*Cook v. Mighell Construction Co.* (1976), 40 Ill. App. 3d 1032, 353 N.E.2d 43); or the dispute in the case centered on whether an area designated as a street could be used for purposes other than for which it was dedicated. *Marshall v. Pfeiffer* (1924), 314 Ill. 286, 145 N.E. 411; *Gerstley v. Globe Wernicke Co.* (1930), 340 Ill. 270, 172 N.E. 829; *Romadka v. Schroff* (1955), 7 Ill. 2d 202, 130 N.E.2d 277.

■■ In the present case there is no evidence that Wilson Avenue was yet improved or opened by the City or in use as a street. On the contrary, that question is the nub of the conflict: the plaintiffs want to open the street and use it. While there is some evidence that a gravel strip leading to a city-owned well house located in the field behind the shopping center approximates the course of Wilson Avenue, that evidence is insufficient to demonstrate public use or that it is an improved, open street. Further, nothing in the record indicates that the City intended to use the land dedicated as a public street for another purpose or to change its character from a dedicated public street when it blocked the plaintiffs' ingress and egress from the field the plaintiffs improved as a road.

■■■ A property owner has no special right of access to a street that is not yet improved or opened by a city or in long time public use. (See *Wisconsin Townhouse Builders, Inc. v. City of Madison* (1967), 37 Wis. 2d 44, 154 N.W.2d 232; *Tott v. City of Sioux City* (1968), 261 Iowa 677, 155 N.W.2d 502; *Lafayette Land Co. v. Village of Tonka Bay* (1975), 305 Minn. 461, 234 N.W.2d 804.) The decision to open a street is a discretionary function, assigned by law to a municipality alone. (*People ex rel. Lyddy v. City of Rock Island* (1963), 45 Ill. App. 2d 76, 194 N.E.2d 647.) And a property owner cannot obtain rights to the street by unilateral action. (*See City of Quincy v. Sturhahn* (1960), 18 Ill. 2d 604, 615, 165 N.E.2d 271, 277, *Moeur v. City of Tempe* (1966), 3 Ariz. App. 196, 412 P.2d 878.) There is no showing here that the City abused its discretion in not opening Wilson Avenue, and concomitant to this exclusive discretion, the City had a right to prevent the plaintiffs' unauthorized opening of and access to it. We, therefore, reverse the circuit court's order to the City to remove the obstruction to the plaintiffs' access to Wilson Avenue; the plaintiffs have no special access right to the street at this time.

■■ Finally, we find the grant of the mandamus for the driveway permit was improvident. The plaintiffs did not request the driveway permit as part of their relief in their initial pleadings and, at trial, except for the introduction of the driveway permit application form, there was no evidence concerning the propriety of the permit itself. We remand the

cause to the circuit court. If the plaintiffs still want to place a driveway on their property, the complaint must be amended to request the permit and there must be evidence taken to demonstrate that the plaintiffs are entitled to it.

Reversed and remanded with directions.

McNAMARA and McGILLICUDDY, JJ., concur.