THE DEPARTMENT OF TRANSPORTATION *ex rel.* THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. DENNIS E. PARR *et al.*, Defendants-Appellees.

Third District    No. 3—93—0613

Opinion filed April 15, 1994.

Michael J. Luke, Assistant Attorney General, of Springfield, Anthony B. Cameron, of Quincy, and Bernard L. Oltman, of Pekin, for appellant.

Timothy L. Bertschy and Karen L. Kendall, both of Heyl, Royster, Voelker & Allen, of Peoria (Bradley S. McMillan, of counsel), for appellees.

JUSTICE McCUSKEY delivered the opinion of the court:

Pursuant to Supreme Court Rule 308 (134 Ill. 2d R. 308), the circuit court of Peoria County certified a question of law to this court. The certified question asks whether the Illinois Department of Transportation (IDOT) may introduce alleged environmental remediation costs at eminent domain proceedings in determining the fair market value of the subject property. We answer the question in the negative because: (1) environmental remediation costs, standing alone, have no direct bearing on the valuation of condemned prop-

erty; and (2) the admission of environmental remediation costs into evidence would violate the due process rights of property owners under the Illinois Environmental Protection Act (415 ILCS 5/1 *et seq.* (West 1992)). As a result, we affirm the trial court's decision to exclude this evidence and remand this cause to the trial court for further proceedings consistent with this order.

## FACTUAL BACKGROUND

Dennis and Betty Parr (the Parrs) owned property abutting the Illinois River at 412 Southwest Washington Street in Peoria. In early 1990, IDOT informed the Parrs that the construction of the Robert H. Michel bridge necessitated the condemnation of their property. At that time, IDOT informed the Parrs that they owed IDOT over $100,000 for the property's environmental remediation costs.

On May 30, 1990, IDOT filed a complaint in the circuit court of Peoria County seeking to condemn the Parrs' property. On June 29, 1990, the Parrs filed a motion to dismiss the complaint, alleging that IDOT failed to make a good-faith offer of just compensation for the property. On August 9, 1990, IDOT filed an action seeking title to the property in a quick-take proceeding pursuant to section 7—103 of the Code of Civil Procedure (735 ILCS 5/7—103 (West 1992)). At the quick-take bench trial, IDOT presented evidence appraising the property's value at zero due to the alleged presence of environmental hazards on the property and the costs of removing the hazards.

On October 4, 1990, the circuit court awarded possession of the property to IDOT. However, the trial court in its written order found section 7—119 of the Code of Civil Procedure (735 ILCS 5/7—119 (West 1992)), governing the admissibility of evidence in eminent domain proceedings, inapplicable to alleged environmental hazards. Further, the court found that IDOT failed to prove the existence of an "unsafe or unlawful condition" on the property. Finally, the court set preliminary just compensation at $40,700.

When IDOT assumed possession of the property, the Illinois Environmental Protection Agency (Agency) took investigative action and sought to correct any environmental hazards on the property. IDOT reached an agreement with the Agency regarding the remediation procedures necessary to alleviate any contamination.

## QUESTION CERTIFIED PURSUANT TO SUPREME COURT RULE 308

On December 9, 1992, the Parrs filed a motion to bar all testimony concerning environmental contamination at the trial to determine just compensation. On January 12, 1993, the trial court held a

hearing at which the court ordered the parties to present additional briefs and argument addressing: (1) whether evidence of environmental clean-up costs was admissible at the condemnation trial; and (2) whether the evidence would implicate the Parrs' procedural due process rights. At a hearing on May 12, 1993, the trial court granted the Parrs' motion to exclude testimony regarding environmental waste and remediation costs. On July 21, 1993, the trial court certified the following question of law to this court:

> "Whether the Illinois Eminent Domain Act and Illinois Environmental Protection Act, along with Illinois common law, gives [sic] the Illinois Department of Transportation the authority to introduce alleged environmental clean-up costs into evidence at condemnation proceedings in determining the fair market value of the subject property or would the introduction of alleged environmental clean-up costs evidenced at condemnation proceedings deny Illinois property owners the rights and defenses afforded other potentially responsible parties under the Illinois Environmental Protection Act."

IDOT thereafter filed a timely application for leave to appeal. We granted IDOT's application on September 9, 1993.

## LEGAL ANALYSIS

Our jurisdiction is based on Supreme Court Rule 308(a) (134 Ill. 2d R. 308(a)). Therefore, our review is solely limited to the questions certified by the trial court. *Lamkin v. Towner* (1990), 138 Ill. 2d 510, 517-18, 563 N.E.2d 449, 452; *Reynolds v. Danz* (1988), 172 Ill. App. 3d 907, 911, 527 N.E.2d 169, 171.

We are called upon to determine whether environmental remediation costs are admissible in eminent domain proceedings to determine the fair market value of the subject property. For the reasons which follow, we answer this question in the negative.

IDOT contends that several decisions of Illinois courts require the admission of environmental remediation costs into evidence. IDOT argues that the trial court must consider environmental remediation costs as a factor adversely affecting the property's value. In support of this position, IDOT relies on Illinois authority generally holding that mineral deposits on the land prior to their severance from the land enhance its value. (See *Department of Public Works & Buildings v. Oberlaender* (1969), 42 Ill. 2d 410, 416, 247 N.E.2d 888.) Moreover, the replacement cost of buildings may be considered by a valuation witness for the purpose of arriving at an estimate of the property's value. (*Chicago Land Clearance Comm'n v. Darrow* (1957), 12 Ill. 2d 365, 373, 146 N.E.2d 1.) However, evidence of the replacement cost is not admissible for the purpose of showing the value of

the buildings separate and apart from the land itself. *Chicago Land Clearance Comm'n v. Darrow*, 12 Ill. 2d at 373.

Similarly, IDOT argues that section 7—119 of the Code of Civil Procedure (the Eminent Domain Act) requires the remediation costs' admission into evidence. Section 7—119 provides, in pertinent part:

"Evidence is admissible as to *** (2) any unsafe, unsanitary, substandard or illegal *condition*, use or occupancy of the property; *** and (4) the reasonable cost of causing the property to be placed in a legal condition, use or occupancy. Such evidence is admissible notwithstanding the absence of any official action taken to require the correction or abatement of such illegal *condition*, use or occupancy." (Emphasis added.) 735 ILCS 5/7—119 (West 1992).

The previously cited cases provide for the admissibility of the existence of structures or materials situated on the property. These structures or materials constitute conditions on the property which affect the value of the land to be condemned. Environmental remediation costs have a value in and of themselves, independent of the fair market value of the land to be condemned. Standing alone, these costs do *not* constitute a condition on the property affecting its value. Rather, as distinguished from a condition, environmental remediation costs constitute merely the price of removing from the property a condition which may or may not exist. The record does not clearly indicate whether any such conditions exist on the property. Accordingly, we find a crucial distinction between the existence of *conditions* on the property and the *costs to provide a remedy* for such alleged conditions on the property. Therefore, the cases IDOT cites do not provide a basis for the admission of environmental remediation costs in eminent domain proceedings.

For similar reasons, we conclude that section 7—119 of the Eminent Domain Act does not permit the admission of environmental remediation costs at an eminent domain proceeding unless the trial court has found the presence of an underlying illegal condition to justify such costs. The language of the statute presupposes the existence of an "illegal condition" affecting the value of the condemned property. The trial court's order of October 4, 1990, indicates the lack of such condition on the property in the case at hand. According to section 7—119, the costs to remedy a condition on condemned property cannot be admitted without proof before the trial court of an illegal condition. In the absence of such proof in this case, we conclude that section 7—119 of the Eminent Domain Act does not authorize the admission of environmental remediation costs in eminent domain proceedings.

We also find that even if environmental remediation costs were

admissible under section 7—119, such admission would violate the procedural due process rights of the owners of condemned property. We determine that the costs' admission in a condemnation proceeding *without* the procedural safeguards provided in the Environmental Protection Act would permit IDOT to circumvent the procedures established by the legislature and the Environmental Protection Agency for recovering environmental remediation costs. We conclude that IDOT's proposed circumvention of established procedure deprives property owners of their rights and defenses under the Environmental Protection Act.

The Environmental Protection Act (the Act) sets forth a comprehensive scheme for protecting the air, land and waters of Illinois from environmental contaminants. The Act's purpose is stated as follows:

> "to establish a unified, state-wide program supplemented by private remedies, to restore, protect and enhance the quality of the environment, and to assure that adverse effects upon the environment are fully considered and borne by those who cause them." (415 ILCS 5/2(b) (West 1992).)

The Act establishes the Agency, which assumes the duty of investigating and ascertaining alleged violations of the Act or its regulations. (415 ILCS 5/4(a), (d), (e) (West 1992).) Section 5 of the Act establishes the Pollution Control Board (Board), which consists of individuals who have expertise in this specialized area of the law. (415 ILCS 5/5(a) (West 1992).) Upon receiving information that an alleged violation of the Act or its regulations has occurred, the Agency may investigate and file a complaint against the offender with the Board. (415 ILCS 5/30, 31(a)(1) (West 1992).) Any person may initiate such an enforcement proceeding. (35 Ill. Adm. Code § 103.120 (1992).) The Board has the authority to hear such complaints. (415 ILCS 5/5(d) (West 1992).) At such a hearing, the complainant bears the burden of proving that a violation of the Act or its regulations has occurred or may occur and that the respondent has caused the violation. (415 ILCS 5/31(c) (West 1992).) A respondent may file third-party actions against other parties who may be responsible for environmental contamination. (*People v. Brockman* (1991), 143 Ill. 2d 351, 375, 574 N.E.2d 626, 636.) In all final determinations, the Board must prepare a written opinion consisting of findings of fact, conclusions of law, and an order. This order may include a direction to cease violations of the Act or its regulations or the imposition of monetary penalties. (35 Ill. Adm. Code § 103.224(a), (b) (1992).) The foregoing provisions of the Act and its regulations set forth the proper procedures for the recovery of environmental remediation costs.

At a minimum, procedural due process requires that a person receive effective notice before the State deprives him or her of an interest in property. (*Rosewell v. Chicago Title & Trust Co.* (1984), 99 Ill. 2d 407, 411-12, 459 N.E.2d 966, 968.) Here, IDOT did not notify the Parrs of the nature or extent of the alleged environmental hazards on their property. IDOT also did not inform the Parrs that IDOT sought to hold them liable for the costs of remediation before that decision was made. Instead, IDOT merely informed the Parrs that they owed IDOT over $100,000 in exchange for taking the property. We conclude that IDOT's demand for payment failed to provide the Parrs with *any* notice of their impending liability or the reasons therefor.

Due process also requires that orderly proceedings must advance according to established rules which do not violate fundamental rights. (*People ex rel. Herman Armanetti, Inc. v. City of Chicago* (1953), 415 Ill. 165, 169, 112 N.E.2d 616.) Under the Act, IDOT is legally entitled to commence an enforcement action to recover environmental remediation costs. Yet, nothing in the record indicates that IDOT has commenced an enforcement action. Consequently, permitting IDOT to admit evidence of remediation costs in an eminent domain proceeding would effectively allow IDOT to recover these costs without adhering to the procedures established to provide that remedy. We cannot allow IDOT to achieve such a result.

As stated previously, property owners against whom remediation costs are sought have a right to require proof of the existence of a violation. They also have a right to bring third-party actions against prior owners of the property and require such other parties to pay remediation costs if the proper tribunal finds them to be responsible. The Eminent Domain Act by itself neither allows for third-party actions nor addresses potential liability under the Environmental Protection Act. The only established procedures for addressing violations of the Environmental Protection Act and providing remedies for such violations are found in the Act itself and the case law giving construction to the Act. For the reasons given, we conclude that the admission of remediation costs at an eminent domain proceeding violates the rights of property owners to have their potential liability properly adjudicated in a proceeding under the Act with the attendant procedural safeguards.

## CONCLUSION

We hold that environmental remediation costs are not admissible in eminent domain actions to determine the fair market value of condemned property. We reach this result for the following reasons:

(1) environmental remediation costs, standing alone, do not constitute a "condition" affecting the value of the property; and (2) admitting such costs as evidence at an eminent domain proceeding would deprive property owners of their rights and defenses under the Environmental Protection Act. Therefore, we affirm the decision of the circuit court of Peoria County and remand this cause to that court. We further direct the trial court to proceed in a manner consistent with this order.

Affirmed and remanded with directions.

BARRY and BRESLIN, JJ., concur.